Paul Barry BUSH, Appellant,

v.

The STATE of Texas, Appellee.

No. 68855.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 3, 1982.

State's Motion for Rehearing Denied
March 17, 1982.

Kenneth W. Fields, court appointed, Pampa, for appellant.

Harold L. Comer, Dist. Atty., Pampa,

Robert Huttash, State's Atty., Austin, for the State.

### OPINION

ODOM, Judge.

This is an appeal from a conviction for capital murder for killing a peace officer. At the punishment phase of the trial the jury answered the issues under Art. 37.071, V.A.C.C.P., affirmatively and the death penalty was assessed. The cause was tried in Wichita County on a change of venue from Hemphill County.

Although appellant raises thirty-six grounds of error on appeal, our disposition of the case requires treatment of two issues. We find it necessary to respond only to these contentions: (1) whether the trial court erred in receiving evidence of appellant's use of drugs, (2) and whether the evidence is sufficient to prove that appellant had knowledge that the murder victim was a peace officer.

The evidence establishes that appellant Bush borrowed a car from a friend Larry King and drove to Canadian on July 12, 1980, to burglarize a drugstore. Upon entering the store, an alarm was tripped and deputy Marion (Corky) Guthrie arrived from the Hemphill County Sheriff's Department. Sheriff Wright arrived shortly thereafter and found Guthrie lying in his car directly in front of the pharmacy. On arrival at the hospital, Guthrie was dead of shotgun wounds.

Larry King testified at trial that on the morning of the shooting, appellant told him he had "killed a cop." He told King that he broke into the pharmacy and was searching for Preludins when he heard a car pull up to the store. He hid behind a wall and "... he said when he raised up, he said he thought the police officer was going to run over him. And he said he shot, and he said the car hit the building." He further told King that he heard Guthrie yelling for help over the police radio and that he snuck over to one side of the car and shot again.

### I.

In grounds of error 15, 16, 24 and 25, appellant complains of testimony admitted over objection regarding his use of the drug Preludin, as it violates the rule prohibiting the introduction of offenses extraneous to the crime charged. The responsive argument by the State is that appellant's use of Preludin and his desire to obtain the drug is admissible as res gestae as well as to demonstrate his motive to burglarize the drugstore where the shooting occurred.

The testimony of Larry King is relied upon in ground of error 15 and we find that it violates the general rule prohibiting the introduction of extraneous offenses. King related that the appellant asked him if he wanted to commit robbery and also told him he knew that Preludins were located in the window of the drugstore. Appellant objected when King was asked why appellant wanted Preludin and following arguments outside the presence of the jury,[1] the following testimony was admitted:

"Q. Have you ever seen Paul Barry Bush use Preludin?

"A. Yes, sir.

"Q. How does he use it?

---

1. Appellant adequately specified his grounds for objecting to any testimony regarding his drug use as allowing the State to portray him as a criminal generally with evidence of an unrelated extraneous offense. Additionally, the objection offered outside of the presence of the jury was sufficient to preserve error to the introduction of the evidence before the jury after the court's ruling. Art. 40.09(6)(d)(3), V.A.C.C.P.

"A. With a syringe.

\* \* \* \* \* \*

"Q. What would he do with the syringe?

"A. He would stick it in his vein.

"Q. For what purpose?

"A. For a high.

"Q. For a high?

"A. Yes, sir.

"Q. Would that be the same thing as a narcotic effect?

"A. Yes, sir."

█ As a general rule an accused is entitled to be prosecuted on the accusation contained in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally. *Smith v. State*, 574 S.W.2d 555; *Riles v. State*, 557 S.W.2d 95; *Eldridge v. State*, 537 S.W.2d 257; *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836. Instances where evidence of extraneous offenses committed by the accused has been held admissible were enunciated in *Albrecht v. State*, 486 S.W.2d 97, wherein the following guidelines were stated:

"Limitations on the admissibility of evidence of an accused's prior criminal conduct are imposed, not because such evidence is without legal relevance to the general issue of whether the accused committed the act charged, but because such evidence is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him [citations omitted]. Thus, before evidence of collateral crimes is admissible, *a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown.*" (Emphasis added.)

█ The State argues that evidence regarding the Preludins is part of the res gestae of the offense. In *Albrecht*, we stated that extraneous offenses are admissible to show the context of the commission of the act because "... the jury has a right to hear what occurred *immediately prior to and subsequent to* the commission of that act so that they may realistically evaluate the evidence." (Emphasis added.) Thus, the evidence is admissible only when two or more offenses are so connected that they constitute an indivisible criminal transaction. 23 Tex.Jur.2d, Sec. 196, Evidence. See also *Hoffert v. State*, 623 S.W.2d 141. Additionally, the probative value of the evidence must outweigh its prejudicial effect. *Murphy v. State*, 587 S.W.2d 718.

The criminal transaction which resulted in the murder of officer Guthrie included burglary of the pharmacy. It is permissible to introduce evidence of that offense because it is so intermingled with the shooting that the jury is entitled to evaluate the criminal transaction in its entire context. In *Calverley v. State*, 511 S.W.2d 60, the defendant appealed from a conviction for assault with intent to murder, claiming that the trial court erroneously admitted evidence of an attempted robbery. The testimony showed that the defendant was in the process of escaping from the robbery when the assault occurred. Therefore, the entire transaction was admissible under the res gestae theory. See also *Ruiz v. State*, 579 S.W.2d 206; *Saunders v. State*, 572 S.W.2d 944; *Jackson v. State*, 548 S.W.2d 901. Although the burglary in the instant case was indeed an interwoven part of a criminal transaction resulting in the charged offense, appellant's use of drugs, his method of injection and the "high" effect upon the user cannot be said to be an act that "occurred immediately prior to [or] subsequent to" the commission of the offense. *Albrecht*, supra. Thus, the testimony does not aid in establishing the *context* of appellant's actions in shooting the victim.

Res gestae has been defined as applicable to material happenings which are interwoven and immediately surround an event. They are "material to the understanding of the arrest itself and explanatory of what occurred at that time." *Gaston v. State*, 574 S.W.2d 120. The testimony concerning appellant's use of Preludin is not related in time or place to the commission of the

murder. Compare *Feather v. State*, 169 Tex.Cr.R. 334, 333 S.W.2d 851, and *Gomez v. State*, 470 S.W.2d 871 (evidence of needle marks material to charge of unlawful possession). See also *King v. State*, 553 S.W.2d 105; *Smith v. State*, 547 S.W.2d 6.

Another exception to the rule that an accused is entitled to be tried on the accusation alleged in the State's pleading is that evidence showing motive is admissible even though it would also show the commission of collateral or extraneous offense. *Rodriguez v. State*, 486 S.W.2d 355. See also *Russell v. State*, 598 S.W.2d 238 and cases cited therein. The rule, however, is inapplicable to the instant case because appellant's use of drugs is not offered to show a motive to commit the offense for which appellant was charged. Rather, the testimony was offered to demonstrate appellant's reasons for burglarizing the pharmacy. We find that the extraneous offense of drug use is impermissibly offered to show a motive to commit an *additional* extraneous offense and that it is not material or relevant to the offense charged.

Although the specific issue was not addressed in *Rodriguez*, supra, the opinion clearly enunciates the rule and its rationale. We recognized that motive is not an essential element of a crime but noted that evidence of motive is always admissible because it is *relevant* as a circumstance tending to prove the commission of an offense. The application of the rule was clarified as follows:

> "However, the proposed testimony, to be admissible as proof of motive, must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial. [citations omitted]."

See also 23 Tex.Jur.2d, Sec. 199, Evidence (evidence of other crimes admissible to show motive "for his commission of the crime with which he is charged"). The rationale underlying the admissibility of evidence to show motive consists primarily of a finding that it is relevant to the commission of the offense. That offense, however,

in each of the cases applying the rule, has been the offense charged. See e.g. *Yarbrough v. State*, 617 S.W.2d 221; *Barefoot v. State*, 596 S.W.2d 875; *Foy v. State*, 593 S.W.2d 707; *Hughes v. State*, 563 S.W.2d 581; *Cherry v. State*, 488 S.W.2d 744; *Washburn v. State*, 167 Tex.Cr.R. 125, 318 S.W.2d 627; *Ellisor v. State*, 282 S.W.2d 393. Extraneous offenses are not admissible to demonstrate motive for the commission of an offense other than the offense for which the defendant is presently charged.

The purpose for limiting evidence of motive to those instances where it is linked to the offense charged is that the rationale of the rule would otherwise be nonexistent. That is, we fail to find any relevancy in demonstrating a motive for an offense other than the crime charged, particularly where the evidence of motive consists of extraneous offenses. The result of such a rule would be to allow evidence of a criminal offense to show motive to commit an additional offense, both of which are extraneous to the offense for which a defendant stands trial.

In the instant case the extraneous offense of burglary is indeed admissible as res gestae of the murder. However, the motive for the commission of an offense which constitutes res gestae is not relevant to the primary offense, nor is it sufficiently probative to outweigh its inherently prejudicial and inflammatory potential. See *Powell v. State*, 478 S.W.2d 95. We also note that the commission of the burglary could have been proven without injecting testimony tending to portray appellant as a drug addict.

It must be remembered that the initial inquiry in determining the admissibility of evidence involves a comparison of probative value to potential prejudice. Further, in determining the admissibility of extraneous offenses, this Court must examine the "evidence which the state has to offer in proof of the essential elements of its case", *Albrecht*, supra at 101; *Ruiz v. State*, supra, in order to establish the necessary rela-

tionship between the offenses and the crime for which appellant stands charged. Compare *Riley v. State*, 328 S.W.2d 306. We find no such relationship between appellant's collateral drug use and the elements necessary to prove capital murder or his motive for committing the offense.

The degree of harm caused by the error complained of in ground of error 16 is further compounded by the introduction of additional references to Preludin during trial. In grounds of error 15, 24 and 25, appellant complains of testimony that he had articulated a desire to obtain the drug, had been "chasing them from town to town, house to house," and had obtained a prescription for Preludin on a prior occasion.

██ The potential for prejudice was further intensified by the testimony of the owner of the pharmacy, Lonnie Donaldson. Witness King had previously stated that he had seen appellant inject the drug with a syringe, "stick it in his vein . . . for a high." Even if appellant's desire for the drug was admissible as tending to show a motive for the commission of the burglary, the details of that use are clearly inadmissible. To intensify the inflammatory nature of the details, the State asked Donaldson whether the drug was ever taken with a syringe. He responded that the drug was taken orally and that to his knowledge Preludin was never prescribed for injection directly into the bloodstream.

Clearly, the overall effect of the repeated references to the drug was to portray appellant as a drug addict and criminal generally. This is precisely the purpose for creating the general rule against the admissibility of extraneous offenses. We find no exception to the rule under which the complained of testimony should be admitted.

## II.

██ The final contention we find necessary to address is the sufficiency of the evidence to show that appellant knew the deceased was a peace officer at the time of the commission of the offense. Under V.T.C.A., Penal Code Sec. 19.03(a)(1), this element aggravates the offense to capital murder and if this Court found the evidence on that element to be insufficient, another trial for the same offense would be barred by double jeopardy. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (Burks rule made applicable to the states).

In *Burks*, the Supreme Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient. . . ." In such a case, the proper remedy is a judgment of acquittal. But see *Granger v. State*, 605 S.W.2d 602 (judgment of acquittal for capital murder does not preclude State from retrial for lesser included offense of murder); *Ex parte Harris*, 600 S.W.2d 791 (evidence insufficient to show aggravated element of offense but defendant could be retried for robbery); *Rucker v. State*, 599 S.W.2d 581 (insufficiency bars retrial for aggravated rape but not simple rape). The *Burks* rule rests on the fact that the State has been given one fair opportunity to present evidence necessary for conviction and where that burden has not been sustained, no further prosecution for that offense may be had. However, where a reversal rests solely on trial error, as distinguished from evidentiary sufficiency, the disposition of the case is not tantamount to a finding that the State has failed to prove its case. *Burks*, 437 U.S. at 18, 98 S.Ct. at 2150; *Ex parte Duran*, 581 S.W.2d 683. In that case, a reversal would not bar a retrial for the same offense under the double jeopardy clause.

██ Appellant challenges the sufficiency of the evidence only with respect to his knowledge that officer Guthrie was a peace officer. Upon examining the record in this regard, we find the evidence to be sufficient and, therefore, a retrial for capital murder under Sec. 19.03(a)(1) is not prohibited under *Burks*.

Larry King testified that following the shooting appellant came to his residence and told him that he had "killed a cop." Appellant apparently stated that while he

was in the pharmacy he heard a car, raised up, and thought the peace officer was going to run over him. Although the evidence does not establish whether the lights were on at the time of the shooting, the vehicle was equipped with a set of red and blue warning lights affixed to its roof. Further, the record indicates that the front of the pharmacy was illuminated by interior lights as well as street lights. When Sheriff Wright arrived at the scene he went inside the pharmacy to view the car driven by the deceased as it was positioned in front of the store. He testified that he could see the overhead red and blue lights on top of the vehicle without difficulty.

We find the evidence sufficient to support a finding that appellant knew the victim of his gunfire was a peace officer. The judgment is reversed and the cause remanded.